LAW OFFICE OF KAREN OAKES
Karen M. Oakes, Esq.
Oregon State Bar 98463
6502 South 6th Street,
Klamath Falls, OR 97603
Telephone: (541) 273-1650
Facsimile: (888) 221-0792
karenmo@charter.net
Attorney for Plaintiff Melville

FILED '09 AUG 06 15:17 USDC-ORM

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

| | |
|---|---|
| CYNTHIA MELVILLE<br><br>            Plaintiff,<br><br>v.<br><br>CHECK ADMINISTRATION SERVICES, INC.<br>CHECK RECOVERY SERVICES, INC.,<br>SARAH CONNOR, CHRISTY WHITMAN AND<br>JANE DOES 1-3<br><br>            Defendants. | Case No. 09-3068-CL<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

### JURISDICTION

1.    Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. §
1692k(d), and pursuant to 28 U.S.C. § 1367 for pendent state law claims.

2.    This action arises out of Defendant's violations of the Fair Debt Collection Practices Act, 15
U.S.C. § 1692 et seq. ("FDCPA"), the Electronic Fund Transfer Act (11 U.S.C. § 1693 et
seq. ("EFTA") and out of the invasions of Plaintiff's personal privacy by these Defendants in
their illegal efforts to collect a consumer debt.

3.    Venue is proper in this District because the acts and transactions occurred here, Plaintiff
resides here, and Defendants transact business here.



-1-

## PARTIES

4.  Plaintiff CYNTHIA MELVILLE is a natural person who resides in the City of Klamath Falls, County of Klamath, State of Oregon, and is a "consumer" or a "person" affected by a violation of the FDCPA, as those terms are defined by 15 U.S.C. § 1692a(3) and 1692k.

5.  Defendant CHECK ADMINISTRATION SERVICES, INC. (hereinafter "Defendant CAS") is a foreign corporation and a collection agency operating from an address of 167 Ashland Avenue, Buffalo, New York, 14222 and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

6.  Defendant CHECK RECOVERY SERVICES, INC.  (hereinafter "Defendant CRS") is a foreign corporation and a collection agency believed to be the agent of Defendant CAS or an alternate identity for Defendant CAS, and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).  Defendant CRS is also located at 255 Great Arrow Avenue, Suite 4, Buffalo, NY 14307, although it may also be located at the same address and at the same phone number of Defendant CAS.

7.  Defendant SARAH CONNER (hereinafter "Defendant CONNOR") is a natural person employed by either Defendant CAS or Defendant CRS or both, as a collection agent and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

8.  Defendant CHRISTY WHITMAN (hereinafter "Defendant WHITMAN") is a natural person employed by either Defendant CAS or Defendant CRS or both, as a collection agent and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

9.  Defendant JANE DOES  (hereinafter "Defendant DOES") are each of them a natural person employed by Defendant CAS or Defendant CRS or both, as collection agent and manager and each of them is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

10.  Plaintiff MELVILLE holds a Bank of America bank account from which Plaintiff may authorize payment electronically as that term is defined by 15 U.S.C. § 1693.

11. Plaintiff MELVILLE has a card, code, or other means of access allowing access to her account for the purpose of initiating electronic fund transfers as that terms is defined by 15 U.S.C. § 1693.

## FACTUAL ALLEGATIONS

12. Sometime before January 2009, Plaintiff allegedly incurred a financial obligation that was primarily for personal, family or household purposes, that went into default for late payment, and was therefore an alleged "debt" as that term is defined by 15 U.S.C. § 1692a(5), namely, a payday loan through Check-N-Go in the approximate amount of $532.00 which was used to make personal purchases of food, clothing, and shelter-related items.

13. Sometime in or around early 2009, the Plaintiff's alleged debt was consigned, placed or otherwise transferred to Defendant CAS or Defendant CRS or to both Defendants for collection from Plaintiff, when thereafter Plaintiff started receiving collection communications from Defendants in an attempt to collect this debt.

### TELEPHONE CONTACTS WITH DEFENDANTS CONNOR AND WHITMAN

14. On January 21, 2009, Plaintiff received a collection call from Defendant CONNOR as agent for Defendant CRS.

15. Defendant CONNOR left a message on Plaintiff's work telephone message system and stated she was calling regarding "charges" being brought against Plaintiff for the creditor Check Recovery Services and warned Plaintiff that a summons was due to be "executed" against Plaintiff at her place of employment and at her residence.

16. Defendant CONNOR left a second message on Plaintiff's cell phone on January 21, 2009, repeating the same message and threats of "charges" being brought against Plaintiff.

17. Plaintiff telephoned the toll-free number left by Defendant CONNOR and was transferred to the voice mail of Defendant WHITMAN.

18. Plaintiff left a voice mail questioning why legal action was being threatened against her and asked which debt was being collected by Defendant CRS.

19. Plaintiff was scared and intimidated by these messages.

20. On January 21, 2009, a third phone call was made to Plaintiff by Defendant CONNOR.

21. Defendant CONNOR informed Plaintiff that CRS was collecting for a payday lender, Check-N-Go, and that two prior debt collection agencies had been involved before CRS received the alleged debt.

22. Defendant CONNOR informed Plaintiff that a summons had been prepared on the charge of a Class A Felony and that Plaintiff would have to appear in court on the matter and ultimately pay an additional $1500 on the debt.

23. Defendant CONNOR informed Plaintiff that the only way to prevent the felony charge from being initiated was to pay the debt in full that day.

24. Plaintiff was extremely upset at the threats of criminal charges and additional fees having to be paid but did not have the funds to pay the alleged debt that day.

25. Defendant CONNOR then offered to set up payment arrangements through post-dating checks or by debit or credit card and offered to "knock it down" to $250.00 if paid that day.

26. Plaintiff explained that she was the sole support of a family of five children and her husband and that she couldn't be arrested or the family's income would be severely reduced. She also explained that she had no money to pay the alleged debt that day.

27. Defendant CONNOR then interrupted her to inform Plaintiff that Plaintiff did not have the time to negotiate with CONNOR as unless arrangements were made that day, the summons would be executed the next morning at 8:00 a.m.

28. Plaintiff offered to make three payments of $160 over a longer period of time, all in order to avoid being arrested and having to appear in court that day. That offer was accepted by Defendant CONNOR.

29.    Defendant CONNOR was then asked by Plaintiff about the nature of the specific criminal charges facing Plaintiff.

30.    Defendant CONNOR informed Plaintiff that MELVILLE was facing a criminal charge of "malicious intent to distribute a bad check" and began talking very fast.

31.    Defendant CONNOR requested Plaintiff stay on the line to speak with her supervisor, Defendant WHITMAN, so that Defendant WHITMAN could input a code to prevent the summons from being executed.

32.    Plaintiff requested faxed confirmation of the arrangements which Defendant CONNOR agreed to send to her at Plaintiff's work fax machine.

33.    Defendant WHITMAN came on the phone with Plaintiff and confirmed the payment arrangements and warned Plaintiff that if she defaulted on the arrangements, the summons would be initiated immediately.

34.    Plaintiff MELVILLE provided authorization over the telephone for Defendants to withdraw payment electronically from her Bank of America account.

35.    On January 21, 2009, Plaintiff received a faxed letter from Defendants indicating Plaintiff's arrangements with Defendant CRS; however the cover page of the fax indicates that the true identity/sender of the fax was not Defendant CRS but rather the fax was from Defendant CAS. At no time did Defendant CONNOR or WHITMAN indicate that they were agents of Defendant CAS.  The fax and cover page are attached as Exhibit A, and incorporated herein by reference.   A search of the New York Corporation Division web site reveals that both Defendants CRS and CAS exist at the same address, as shown by Exhibit B, attached hereto and incorporated herein by reference.

36.    Plaintiff was terrified by the phone conversations with Defendants CONNOR and WHITMAN and was intimidated into making payment arrangements while protesting that her children came first and that she had no money to pay them, especially on such short notice.

37.     Defendants CONNOR and WHITMAN ignored Plaintiff's protestations and continued to make threats until they eventually ended the call.

38.     On January 28, 2009, Plaintiff sent a written withdrawal of her authorization for the February 6, 2009 electronic funds transfer by Defendant CRS.     She caused a facsimile transmission to be sent to the same fax number from which the confirmation letter from Defendants CRS/CAS indicatinng that she was withdrawing authorization for payment.

39.     In that January 28, 2009 fax, Plaintiff also sent written notice to Defendants that Defendants should not call her work telephone number again.     Plaintiff obtained a confirmation of receipt of transmission of that fax by Defendants.     A copy of that letter and confirmation of transmission/receipt is attached as Exhibit C, attached hereto and incorporated herein by reference.

40.     Plaintiff, concerned about Defendants attempting to charge against her account, closed the account after withdrawing the authorization.

41.     Despite the receipt of the withdrawal of the authorization, Defendant CRS attempted to charge an  initiated an unauthorized electronic funds transfer from Plaintiff's account in the amount of $160.00 on February 6, 2009 as indicated by Exhibit D, a printout showing the attempted unauthorized funds transfer activity on Plaintiff's account, attached hereto and incorporated herein by reference.

42.     On February 11, 2009, Defendant CONNOR called Plaintiff's cell phone.     Defendant CONNOR left a message threatening Plaintiff with charges for "theft of services in the amount of $1532.48" and with "malicious intent to defraud a financial institution" (for the payday lender) due to the withdrawal of authorization of payment.     Defendant CONNOR informed Plaintiff during the message that Defendant CRS was "backed by the FDIC" and that would mean an additional charge of "malicious intent to defraud a financial institution" (for withdrawing Plaintiff's authorization of payment).     Defendant CONNOR then informed

Defendant CRS, or one of them is acting as agent for the other.   In any scenario, Defendants are attempting to conceal their true identity.    The attempted unauthorized electronic funds transfer was done in violation of the provisions of the EFTA, including but not limited to 15 U.S.C. § 1693.

### June 19, 2009 and June 24, 2009 collection calls from Defendant Connor

49.    On or about June 19, 2009, Defendant DOE, as agent for Defendants CAS and or CRS or both of them, initiated a phone call to Plaintiff's home phone and a recorded message was left indicating that the message was being left for Cynthia Melville, that Cynthia Melville had been named as a "person of interest in a very important matter", that it was imperative that Cynthia Melville return the phone call and that Cynthia Melville "had been notified".  The toll-free number provided is that of Defendants CAS and CRS.

*50.*    On or about June 19, 2009, Defendant DOE, as agent for Defendant CAS and or CRS, initiated a second phone call to Plaintiff's cell phone and a recorded message was left indicating that the message was being left for Cynthia Melville, that Cynthia Melville had been named as a "person of interest in a very important matter", that it was imperative that Cynthia Melville return the phone call and that Cynthia Melville "had been notified". The toll-free number provided is that of Defendants CAS and CRS.

51.    On or about June 24, 2009, Defendant DOE, as agent for Defendants CAS and or CRS, initiated a phone call to Plaintiff's cell phone and a recorded message was left indicating that the message was being left for Cynthia Melville, that Cynthia Melville had been named as a "person of interest in a very important matter", that it was imperative that Cynthia Melville return the phone call and that Cynthia Melville "had been notified".  The toll-free number provided is that of Defendants CAS and CRS.

52.    On July 2, 2009, Defendant DOE, as agent for Defendants CAS and or CRS or both of them, initiated a phone call to Plaintiff's place of employment and a recorded message was left indicating that the message was being left for Cynthia Melville, that Cynthia Melville had

been named as a "person of interest in a very important matter", that it was imperative that Cynthia Melville return the phone call and that Cynthia Melville "had been notified". The toll-free number provided is that of Defendants CAS and CRS.

53.    These calls on this occasion from Defendants CAS and or CRS to Plaintiff were a collection communication in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692d(1), 1692d(2), 1692d(5), 1692e, 1692e(2), 1692e(4), 1692e(5), 1692e(7), 1692e(10), 1692e(11), 1692f and 1692f(1), amongst others.

### Collection phone calls to Plaintiff's mother's telephone

54.    On or about June 19, 2009, Defendant DOE, as agent for Defendants CAS and or CRS initiated a phone call for that date to Plaintiff's mother's telephone number and a recorded message was left indicating that the message was being left for Cynthia Melville, that Cynthia Melville had been named as a "person of interest in a very important matter", that it was imperative that Cynthia Melville return the phone call and that Cynthia Melville "had been notified". The toll-free number provided is that of Defendants CAS and CRS.

55.    On or about June 24, 2009, Defendant Doe, as agent for Defendants CAS and or CRS, initiated a phone call to Plaintiff's mother's telephone number and a recorded message was left indicating that the message was being left for Cynthia Melville, that Cynthia Melville had been named as a "person of interest in a very important matter", that it was imperative that Cynthia Melville return the phone call and that Cynthia Melville "had been notified". The toll-free number provided is that of Defendants CAS and CRS.

56.    On or about June 24, 2009, Defendant Doe, as agent for Defendants CAS and or CRS, initiated a phone call to Plaintiff's mother's telephone number and a recorded message was left indicating that the message was being left for Cynthia Melville, that Cynthia Melville had been named as a "person of interest in a very important matter", that it was imperative that

Cynthia Melville return the phone call and that Cynthia Melville "had been notified". The toll-free number provided is that of Defendants CAS and CRS.

57.   On June 25, 2009 Plaintiff's mother returned a call to the toll-free number left by Defendant DOE in a previous message. Upon making contact, she identified herself as Plaintiff's mother and was asked for the case number which was left with the message. She was told that they were a debt collector trying to collect from Plaintiff on a payday loan from 2007 that the Plaintiff had not paid as agreed, and that a summons either would be issued or had been issued for Plaintiff unless Plaintiff called Defendant immediately.

58.   Plaintiff was humiliated by Defendants' phone calls to her mother. Plaintiff has suffered anxiety, illness, loss of sleep, headaches, nausea, fear, embarrassment, nervousness, intimidation, terror and stomach aches, all caused by the conduct of Defendants.

59.   The message left on voice mails beginning in June 2009 were left by Defendant DOES 1-3, unknown female or females, whose true identity or identities are unknown.

60.   These calls on this occasion from Defendants CAS and or CRS to Plaintiff or to Plaintiff's mother were a collection communication in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692d(2), 1692d(5), 1692e, 1692e(2), 1692e(4), 1692e(5), 1692e(7), 1692e(8),  1692e(10), 1692e(14), 1692f and 1692f(1), amongst others.

### Summary

61.   The above-detailed conduct by Defendants, of harassing Plaintiff in an effort to collect this debt was a violation of numerous and multiple provisions of the FDCPA, including but not limited to all of the above mentioned provisions of the FDCPA, as well as an invasion of Plaintiff's privacy by an intrusion upon seclusion and by revelation of financial private facts.

62.   The above-detailed conduct by Defendants, of attempting an unauthorized electronic funds transfer was a violation of multiple provisions of the EFTA, as well as an invasion of the Plaintiff's privacy by an intrusion on seclusion.

63.  Plaintiff has suffered actual damages as a result of these illegal collection communications by these Defendants in the form of anger, anxiety, emotional distress, fear, frustration, upset, humiliation, embarrassment, amongst other negative emotions, as well as suffering from unjustified and abusive invasions of personal privacy.

## TRIAL BY JURY

64.  Plaintiff is entitled to and hereby respectfully demands a trial by jury.  US Const. amend. 7.  Fed.R.Civ.P. 38.

## CAUSES OF ACTION

### COUNT I.

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

### 15 U.S.C. § 1692 et seq.

65.  Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

66.  The foregoing acts and omissions of each and every Defendant constitute numerous and multiple violations of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq.

67.  As a result of each and every Defendant's violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from each and every Defendant herein.

### COUNT II.
### INVASION OF PRIVACY BY INTRUSION UPON SECLUSION AND BY DISCLOSURE TO A THIRD PARTY

68.  Plaintiff incorporates by reference all of the paragraphs of this Complaint as though fully stated herein.

69.  Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

> **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy.**

15 U.S.C. § 1692(a) (emphasis added).

70.  Defendants intentionally interfered, physically or otherwise, with the solitude, seclusion and or private concerns or affairs of the Plaintiff, namely, by repeatedly and unlawfully attempting to collect a debt and thereby invaded Plaintiff's privacy.

71.  Defendants intentionally caused harm to Plaintiff's emotional well being by engaging in highly offensive conduct in the course of collecting this debt thereby invading and intruding upon Plaintiff's right to privacy.

72.  Telling Plaintiff that she was going to have to appear in court facing felony charges and that the summons would be executed at her place of employment, telling Plaintiff that if she did not pay that very day, that the debt would be tripled, and repeatedly calling Plaintiff's mother, are examples of Defendants' conduct which violated Plaintiff's right to financial and other privacy.

73.  Plaintiff had a reasonable expectation of privacy in Plaintiff's solitude, seclusion, and or private concerns or affairs.

74.  These intrusions and invasions by Defendants occurred in a way that would be highly offensive to a reasonable person in that position.

75.  As a result of such invasions of privacy, Plaintiff is entitled to actual damages in an amount to be determined at trial from each and every Defendant.

## COUNT III.

## VIOLATIONS OF THE ELECTRONIC FUND TRANSFER ACT

### 15 U.S.C. § 1693 et seq

76.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

77.    The foregoing acts and omissions of each and every Defendant constitute numerous and multiple violations of the EFTA.

78.    As a result of each and every Defendant's violations of the EFTA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1693m(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692m(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1693m(a)(3) from each and every Defendant herein.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that judgment be entered against each and every Defendant:

## COUNT I.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

### 15 U.S.C. § 1692 et seq.

- for an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against each and every Defendant and for Plaintiff;

- for an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) against each and every Defendant and for Plaintiff;

- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against each and every Defendant and for Plaintiff;

## COUNT II.

## INVASION OF PRIVACY BY INTRUSION UPON SECLUSION AND BY DISCLOSURE TO A THIRD PARTY

- for an award of actual damages from each and every Defendant for the emotional distress suffered as a result of the FDCPA violation, the EFTA violation, and invasions of privacy in an amount to be determined at trial and for Plaintiff;

## COUNT III.

## VIOLATIONS OF THE ELECTRONIC FUNDS TRANSFER ACT

## 15 U.S.C. § 1693 et seq.

- for an award of actual damages pursuant to 15 U.S.C. § 1692m(a)(1) against each and every Defendant and for Plaintiff;

- for an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. §169m(a)(2)(A) against each and every Defendant and for Plaintiff;

- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1693m(a)(3) against each and every Defendant and for Plaintiff; and

- for such other and further relief as may be just and proper.

Dated: ___8/6/___ , 2009

Respectfully submitted,

**LAW OFFICE OF KAREN M. OAKES, P.C.**

By: _s/Karen M. Oakes_
Karen M. Oakes, Esq.
Oregon State Bar 98463
6502 South 6th Street,
Klamath Falls, OR 97603
Telephone: (541) 273-1650
Facsimile: (888) 221-0792
karenmo@charter.net

**Attorney for Plaintiff**



**CAS** Check
Administration
Services

# Fax

**To:** 541-885-7404          **From:** (716) 332-0926

**Fax:**                      **Pages:**

**Phone:**                    **Date:**

**Re:**                       **cc:**

☐ Urgent   ☑ For Review   ☐ Please Comment   ☐ Please Reply   ☐ Please Recycle

**Notice of Confidentiality:** The information included and/or attached in this facsimile may contain confidential or privileged information and is intended for the addressee. Any unauthorized disclosure, reproduction, distribution or the taking of action in reliance on the contents of the information is prohibited. If you believe that you have received the message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.

532.48

P.S are line # is
888-414-4143
716-332-1859

SIF = 500⁰⁰
PAYMENT ARRANGEMENT AS FOLLOWS

2-6-09 - 160⁰⁰
2-20-09 - 100⁰⁰
3-0-09 - 160⁰⁰
Total   500⁰⁰

please feel free to call me if you
any question ☺ thank you  Sarah Connor

Exhibit A
Page 1 of 2

January 21, 2009

Cynthia Melville
2749 Hope St.
Klamath Falls, OR 97603

Case number: 119941
Original Creditor: Check N Go
Balance: $500.00

Dear Cynthia Melville:

You have entered into a voluntary agreement with Check Recovery Services, Inc. to satisfy your delinquent account. All your rights and obligations with regards to this account are with Check Recovery Services, Inc.

Your first payment in the amount of $160.00 is due in our office on February 6, 2009. Your second payment in the amount of $160.00 is due in our office on or before February 20, 2009. Your third payment in the amount of $160.00 is due in our office on or before March 6, 2009. Upon clearance of funds, your account will be considered paid in full, and a paid in full letter will be mailed to you which you can use to update your credit report. If you fail to adhere to the arrangement stated above, the balance in full, as well as a $30.00 fee for any payment that is returned due to insufficient funds, shall be due immediately.

If you have any questions regarding your account, you can reach us at 1-888-414-4143 between the hours of 8:30 am to 9:00 pm est., Monday through Friday.

Federal law requires us to notify you that this is a communication from a debt recovery corporation. This is an attempt to collect a debt. Any information obtained will be used for that purpose.

Sincerely,

Check Recovery Services, Inc.

Exhibit A
Page 2 of 2

Entity Information

# NYS Department of State

## Division of Corporations

### Entity Information

Selected Entity Name: CHECK ADMINISTRATION SERVICES, INC.
Selected Entity Status Information

**Current Entity Name:** CHECK ADMINISTRATION SERVICES, INC.
**Initial DOS Filing Date:** MARCH 04, 2008
**County:** ERIE
**Jurisdiction:** NEW YORK
**Entity Type:** DOMESTIC BUSINESS CORPORATION
**Current Entity Status:** ACTIVE

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
CHECK ADMINISTRATION SERVICES, INC.
167 ASHLAND AVENUE
BUFFALO, NEW YORK, 14222

**Registered Agent**

NONE

This office does not require or maintain information
regarding the names and addresses of officers,
shareholders or directors of a corporation.

**\*Stock Information**

| # of Shares | Type of Stock | $ Value per Share |
|---|---|---|
| 200 | No Par Value | |

\*Stock information is applicable to domestic business corporations.

**Name History**

| Filing Date | Name Type | Entity Name |
|---|---|---|
| MAR 04, 2008 | Actual | CHECK ADMINISTRATION SERVICES, INC. |

A **Fictitious** name must be used when the **Actual** name of a foreign entity is unavailable for use in New York State. The entity must use the fictitious name when conducting its activities or business in New

Exhibit B
Page 1 of 4

Entity Information

York State.

NOTE: New York State does not issue organizational identification numbers.

Search Results                    New Search

Division of Corporations, State Records and UCC Home Page    NYS Department of State Home Page

Exhibit B
Page 2 of 4

# NYS Department of State

## Division of Corporations

### Entity Information

Selected Entity Name: CHECK RECOVERY SERVICES, INC.
Selected Entity Status Information

**Current Entity Name:** CHECK RECOVERY SERVICES, INC.
**Initial DOS Filing Date:** OCTOBER 03, 2008
**County:** ERIE
**Jurisdiction:** NEW YORK
**Entity Type:** DOMESTIC BUSINESS CORPORATION
**Current Entity Status:** ACTIVE

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
CHECK RECOVERY SERVICES, INC.
167 ASHLAND AVENUE
BUFFALO, NEW YORK, 14222

**Registered Agent**

NONE

This office does not require or maintain information
regarding the names and addresses of officers,
shareholders or directors of a corporation.

**\*Stock Information**

| # of Shares | Type of Stock | $ Value per Share |
|---|---|---|
| 200 | No Par Value | |

\*Stock information is applicable to domestic business corporations.

**Name History**

| Filing Date | Name Type | Entity Name |
|---|---|---|
| OCT 03, 2008 | Actual | CHECK RECOVERY SERVICES, INC. |

A **Fictitious** name must be used when the **Actual** name of a foreign entity is unavailable for use in New
York State. The entity must use the fictitious name when conducting its activities or business in New

http://appsext8.dos.state.ny.us/corp_public/CORPSEARCH.ENTITY_INFORMATION?p...  6/25/2009

Exhibit B
Page 3 of 4

York State.

NOTE: New York State does not issue organizational identification numbers.

Search Results                    New Search

Division of Corporations, State Records and UCC Home Page    NYS Department of State Home Page

Exhibit B
Page 4 of 4

716-332-0926

# JELD-WEN WOOD FIBER DIVISION
### 3309 LAKEPORT BLVD.
### KLAMATH FALLS, OR 97601
541-885-7403                    541-885-7404 FAX

## CONFIDENTIAL COVER SHEET

## PLEASE DELIVER IMMEDIATELY

**DATE**    1/28/09

**TO** Sarah Conner                    **FROM** Cynthia Melville

**OF** Check Recovery Services          **TOTAL PAGES (INCLUDING COVER)**    1

**CONFIDENTIALITY NOTICE:** This message is intended only for the use of the individual to whom, or entity to which, it is addressed and may contain information that is privileged, confidential, private, and protected by law. If you are not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, copying, or taking of any other action in reliance on the contents of this communication is prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us at the above address.
Thank you

**MESSAGE** Sarah, I am sending this fax to inform you that I am cancelling my payment arrangement. I just can not afford to do this at this time. Please note this in my account records with your company. Case number 119941. Please do not contact me at work in regards to this matter as I am not allowed to take these kinds of phone calls at work.

Thank you,

Cynthia Melville

Exhibit C
Page 1 of 2

## Activity Report

Date/Time
Local ID
Local Name
Company Logo

1-28-09;11:12AM
5418857404
JELD WEN FIBER

** Send **

| No. | Doc | Remote Station | Start Time | Duration | Pages | | Mode | Comments | Results |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 039 | Fiber WASHINGTON | 1-20-09;12:35AM | 1'03" | 1/ | 1 | EC | | CP 14400 |
| 2 | 043 | REACH | 8:42AM | 26" | 1/ | 1 | EC | ' | CP 14400 |
| 3 | 045 | 98502624 | 8:49AM | 37" | 1/ | 1 | G3 | | CP 14400 |
| 4 | 057 | 98514326 | 12:29PM | 33'57" | 53/ | 53 | EC | | CP 14400 |
| 5 | 089 | 915036573352 | 3:09PM | 52" | 2/ | 2 | EC | | CP 14400 |
| 6 | 001 | 915416730901 | 1-22-09; 7:04AM | 38" | 1/ | 1 | EC | | CP 14400 |
| 7 | 008 | Fiber WASHINGTON | 7:38AM | 1'12" | 2/ | 2 | EC | | CP 14400 |
| 8 | 008 | Fiber WASHINGTON | 7:40AM | 53" | 1/ | 1 | EC | | CP 14400 |
| 9 | 010 | 91615042710 | 8:10AM | 56" | 1/ | 1 | G3 | | CP 14400 |
| 10 | 043 | Fiber WASHINGTON | 1-23-09; 4:06AM | 45" | 1/ | 1 | G3 | | CP 14400 |
| 11 | 047 | 98502624 | 8:24AM | 37" | 1/ | 1 | G3 | | CP 14400 |
| 12 | 053 | 98514326 | 12:25PM | 2'34" | 4/ | 4 | EC | | CP 14400 |
| 13 | 058 | 98514326 | 1:09PM | 32'04" | 58/ | 58 | EC | | CP 14400 |
| 14 | 092 | 915417265365 | 1-26-09; 3:13PM | 31" | 1/ | 1 | EC | | CP 4800 |
| 15 | 098 | 918668879441 | 3:29PM | 2'40" | 2/ | 2 | EC | | CP 14400 |
| 16 | 098 | 98514326 | 3:44PM | 1'09" | 3/ | 3 | EC | | CP 14400 |
| 17 | 030 | 98514326 | 1-27-09;11:48AM | 26'45" | 44/ | 44 | EC | | CP 14400 |
| 18 | 034 | 98514326 | 12:20PM | 13'33" | 32/ | 32 | EC | | CP 14400 |
| 19 | 051 | 917163320926 | 1-28-09;11:11AM | 35" | 1/ | 1 | EC | | CP 14400 |

Total    210

** Receive **

| No. | Doc | Remote Station | Start Time | Duration | Pages | Mode | Comments | Results |
|---|---|---|---|---|---|---|---|---|
| 1 | 032 | Fax | 1-19-09; 5:31PM | 32" | 2 | EC | | CP 14400 |
| 2 | 037 | 541 885 4938 | 5:52PM | 30" | 1 | EC | | CP 14400 |
| 3 | 047 | G3 | 1-20-09; 9:37AM | 28" | - | G3 | | 053F 9600 |
| 4 | 049 | G3 | 10:08AM | 33" | 1 | G3 | | CP 14400 |
| 5 | 051 | JELD WEN FIBER OF WA | 10:38AM | 34" | 1 | EC | | CP 14400 |
| 6 | 055 | 418 862 2827 | 11:54AM | 31" | 1 | EC | | CP 14400 |
| 7 | 061 | 5094571853 | 1:06PM | 27" | 1 | EC | | CP 14400 |
| 8 | 063 | 5418835265 | 2:39PM | 1'08" | 3 | EC | | CP 14400 |
| 9 | 065 | 5036573352 | 3:02PM | 30" | 1 | EC | | CP 12000 |
| 10 | 087 | 541 884 5290 | 3:03PM | 1'59" | 4 | EC | | CP 14400 |
| 11 | 072 | 5418835265 | 3:33PM | 1'05" | 3 | EC | | CP 14400 |
| 12 | 074 | JELD-WEN Inc | 3:35PM | 28" | 1 | EC | | CP 14400 |
| 13 | 081 | 3347429699 | 1-21-09; 8:24AM | 5'12" | 21 | EC | | CP 14400 |
| 14 | 084 | FAX | 11:06AM | 32" | 1 | EC | | CP 14400 |
| 15 | 088 | 5418831071 | 1:30PM | 27" | 1 | EC | | CP 14400 |
| 16 | 090 | G3 | 3:08PM | 58" | 1 | G3 | | 0515 14400 |
| 17 | 092 | | 3:10PM | 1'09" | 2 | G3 | | CP 14400 |
| 18 | 015 | FAX | 1-22-09; 9:02AM | 34" | 1 | EC | | CP 14400 |
| 19 | 017 | 5416730901 | 9:35AM | 40" | 1 | EC | | CP 14400 |
| 20 | 021 | JELD-WEN Inc | 1:00PM | 31" | 1 | EC | | CP 14400 |
| 21 | 023 | 15417732388 | 1:27PM | 32" | 1 | EC | | CP 14400 |
| 22 | 025 | JELD-WEN Inc | 3:17PM | 47" | 2 | EC | | CP 14400 |
| 23 | 049 | 5034035751 | 1-23-09; 9:18AM | 53" | 2 | EC | | CP 14400 |
| 24 | 066 | Fax | 3:09PM | 2'47" | 3 | G3 | | CP 14400 |
| 25 | 069 | RightFax | 6:12PM | 49" | 1 | EC | | CP 14400 |
| 26 | 075 | | 1-25-09; 7:36PM | 49" | 1 | EC | | CP 14400 |
| 27 | 079 | 1-800-345-7819 | 1-26-09; 8:03AM | 40" | 1 | EC | | CP 14400 |
| 28 | 094 | 5417265365 | 3:22PM | 59" | 1 | G3 | | CP 14400 |
| 29 | 003 | | 4:36PM | 36" | 1 | EC | | CP 14400 |
| 30 | 011 | Fax | 1-27-09; 9:18AM | 28" | 1 | EC | | CP 14400 |
| 31 | 014 | JELD-WEN Inc | 9:53AM | 46" | 2 | EC | | CP 14400 |
| 32 | 016 | 3347429699 | 10:11AM | 1'41" | 6 | EC | | CP 14400 |
| 33 | 018 | 509 698 4026 | 10:13AM | 56" | 2 | EC | | CP 14400 |
| 34 | 037 | 5418835265 | 2:25PM | 1'12" | 3 | EC | | CP 14400 |
| 35 | 040 | | 10:32PM | 1'02" | 2 | EC | | CP 14400 |

Total    76

** Notes **
EC: Error Correct
BC: Broadcast Send
CP: Completed
LS: Local Scan

RE: Resend
MP: Multi-Poll
RM: Receive to Memory
LP: Local Print

PD: Polled by Remote
PG: Polling a Remote
DR: Document Removed
FO: Forced Output

MB: Receive to Mailbox
PI: Power Interruption
TM: Terminated by user
WT: Waiting Transfer

Exhibit C
Page 2 of 2

# JELD-WEN WOOD FIBER DIVISION

### 3309 LAKEPORT BLVD.
### KLAMATH FALLS, OR 97601
**541-885-7403**              **541-885-7404 FAX**

## CONFIDENTIAL COVER SHEET

## PLEASE DELIVER IMMEDIATELY

DATE _4-29-09_

TO _Karen Oakes_        FROM _Cynthia Melville_

OF _Law Offices_        **TOTAL PAGES** (INCLUDING COVER) ___

_888-221-0792_

**CONFIDENTIALITY NOTICE:** This message is intended only for the use of the individual to whom, or entity to which, it is addressed and may contain information that is privileged, confidential, private, and protected by law. If you are not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, copying, or taking of any other action in reliance on the contents of this communication is prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us at the above address.
Thank you

**MESSAGE** _Karen here is the credit card activity that shows Check Recovery Services (aka CRS) tried to take the money out of my account after I sent them the fax telling them not to. Please add this to my case file and let me know if there is anything else I need to do. Email work cynthiame@jeld-wen.co. home melvillecm@yahoo.com . Cellphone 891-7262._

_Thank you_
_Cynthia Melville_



**Bank of America**
**Customer Service & Support**
P.O. Box 25118
Tampa, FL 33622

3/17/2009

CYNTHIA MELVILLE
2749 HOPE ST
KLAMATH FALLS  OR  97603-6813

Account Number Ending In 3075

Dear Bank of America Customer:

Thank you for contacting Customer Service & Support.

We have enclosed the documents you requested.

We value your business and want to provide the best service.  Please call (800)432-1000 toll free to speak with a Customer Service & Support associate if we may be of additional assistance.

Thank you for banking with Bank of America

JoAnn Steffey
JoAnn Steffey
Bank of America

Enclosure
ATM Transaction Print

Confirmation Number: 1295-320490282

Member FI

Exhibit D
Page 2 of 3



## VERIFICATION OF COMPLAINT AND CERTIFICATION

STATE OF OREGON          )
                                  ) ss

COUNTY OF KLAMATH      )

Plaintiff Cynthia Melville, having first been duly sworn and upon oath, deposes and says as follows:

1. I am a Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorney and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.
6. Each and every exhibit I have provided to my attorney which has been attached to this Complaint is a true and correct copy of the original.
7. Except for clearly indicated redactions made by my attorney where appropriate, I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

Cynthia Melville

Subscribed and sworn to before me by Cynthia Melville this _2_ day of July, 2009.

Notary Public
My commission ends on _9/26_, 20_11_

OFFICIAL SEAL
LESLIE R. BROWN
NOTARY PUBLIC - OREGON
COMMISSION NO. 421779
MY COMMISSION EXPIRES SEPTEMBER 26, 2011